CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

NOV 3 0 2010

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICK COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

-----------------------------------------------------------------x

RUDEAN THOMAS,

                              Plaintiff(s),

vs.

WELLS FARGO BANK N.A. , ET.AL

PROFESSIONAL FORECLOSURE CORP OF VA.,

SHAPIRO AND BURSON, LLP.,
and

OCWEN LOAN SERVICING, LLC.

                              Defendant(s).

-----------------------------------------------------------------x

Case No.   Case # 4:10CV00060
(JURY TRAIL DEMAND)

AMENDED COMPLAINT TO
SET ASIDE FORECLOSURE
SALE AND WRIT OF POSSESSION

## THE PARTIES

1.Plaintiff(s), RUDEAN THOMAS is one of the people of posterity of the State of Virginia(hereinafterreferred to as the Plaintiff). who dwells at 1032 Reaves Loop, Virgilina, Va. 24598. (hereinafter referredto as "Property") located in the County of HALIFAX, State of VIRGINIA. Plaintiff is unschooled in law and notices the Court of enunciation of principles as in Haines v. Kerner, 404 U.S. 519 (1972) wherein the court has directed that those who are unschooled in law making pleadings and/or complaints shall have to look to the substance of the pleadings rather than in the form, and hereby makes the following /notice in the above-referenced matter without wavier of any defenses. If there any defects in this document, Defendants requests that this Honorable Court interpret defects accordingly and render a proper and just decision rather that penalizing for procedural or other errors due to Defendant's lack of formal training.

2. Defendant, WELLS FARGO BANK, N.A.. (hereinafter referred to as "Defendant") is a corporation/banking association, having offices at 1661 Worthington Road, Suite 100,West Palm Beach, Florida 33415. WELLS FARGO BANK , N.A. as "Note Holder" (hereinafter " WELLS FARGO") upon information and belief is a federally chartered bank, whose principal place of business is located in San Francisco California. Defendant WELLS FARGO regularly transacts business in the Commonwealth of Virginia including buying, selling and /or securitizing mortgages on property located in the Commonwealth, specifically including the Property.

3. Defendant OCWEN LOAN SERVICING, LLC (hereinafter "Ocwen") is a limited liability company existing and organized under the laws of the State of Florida. Defendant OCWEN's principal place of business is located in Palm, Beach Florida. Defendant OCWEN is licensed to and regularly does transact business in the Commonwealth of Virginia including buying, selling securitizing and /or servicing mortgages on property located in the Commonwealth, specifically including the Property.

4. Defendant Professional Foreclosure Corporation is a corporation in Virginia. The purpose of the corporation is to serve as s substitute trustee and conduct foreclosure sales at the behest of Shapiro and Burson, LLP. Shapiro and Burson, LLP is one of the law firms that Freddie Mac had designate must be used to foreclosure on its home loans secured by property located in Virginia.

5. Defendant Shapiro and Burson, LLP., Is a firm that does business in an is located in part in Virginia and has been in operation for nearly 25 years, representing institutional mortgages lenders. Some of the services rendered are in foreclosures, bankruptcies, evictions, and other related matter throughout Virginia and other areas. They are a Freddie Mac Designated Counsel in Virginia. Shaprio and Burson have been given the award for best eviction firm in the Southeast Market on several occasions by Fannie Mae.

## JURSIDICTION AND VENUE

6This Court may exercise personal jurisdiction over Defendants in this action because they transacted business including the transaction at issue in the present matter, within the commonwealth of Virginia.

## FACTS

6. Plaintiff in Honor . on June 26, 1996, signed a Deed of Trust, and signed a Promissory Note with DELTA FUNDING CORPORATION, as the Lender and Note Holder to finalize the closing process on the property located at 306 Clayton Street, Winston Salem, NC. The purpose of this introduction of information is to show a relationship with Delta., whom I believed to be a trust worthy company. The is no mention of simple interest is this document. So the "SIMPLE INTEREST". See exhibit of comparison of the notes borh for Plaintiff from Delta Funding.oen in 1996 and one is 1997.___1_____

7. All events relevant to this matter from this point on occurred in Halifax County,Virginia.

8. Plaintiff assumed the Property on Sept. 18th 1996, with the assistance of her Attorney Pam I. Gordon.

9. Plaintiff got married on July 15, 1997 in Halifax Virginia, at the Court House.

On August 29, 1997, Plaintiff signed papers for the purpose refinancing the Property located Route 1, Box 97, (1032 Reaves Loop) Virgilina, Virginia., under the direction of Pam I. Gordon, Attorney at Law.
 Plaintiff in Honor, on advice of who I believed to be my Counsel, Pam I Gordon, signed a Deed of Trust, naming Dennis Molloy of 2931 Fort Lee Street, Herndon, VA 22701 as trustee. See Exhibit___2____where Attorney Pam I. Gordon, now represents DELTA FUNGING in the mist of the

loan closing. An investigation has been requested based on "Conflict of Interest"of Attorney Pam I. Gordon. Ms. Gordon, served as counselor for Plaintiff in the loan assumption between 1995-1996 of the said property. She also served as counselor in the refinancing of the proposed loan in 1997, and the Attorney Gordon represented Delta Funding at the closing table on Aug, 29, 1997. Ms. Gordon served as Commissioner of Accounts in the foreclosure action, and did give Plaintiff full documents pertinent to the action when requested. Exhibit __3__ requesting the Virginia State Bar to investigate this matter of conflict of interest.


10. Plaintiff in Honor, also signed a Promissory Note with DELTA FUNDING CORPORATION, as the Lender and Note Holder to finalize the closing process on the Property, under the directions and guidance of Pam I. Gordon, Attorney. The word usage "SIMPLE INTEREST". And the applied concept was deliberate and intentionally place in the Promissory to set a trap of deception. Knowing that there was a slim to non change of the loan ever being refinanced or paid off .

11. The Promissory note was for the amount of $61,750.00.

12. After executing the loan documents, papers were packed away. Plaintiff began to make her payments to Delta Funding Corporation, Woodbury, New York. With the first payment of $685.50 being due October 4, 1997.

13. Plaintiff made first payment which posted Sept. 26, 1997 in the amount of $736.17, to start reducing the principal amount, of this amount $133.56 went to principal.

14.Plaintiff next payment of $744.63 posted on Nov. 3, 1997. Payment was late because of the sudden tragic death of Plaintiff husband, who died October 22, 1997. Plaintiffs financial status changed. Of this total payment $685.50 went to interest.

15. Plaintiff has continued to make payments through extreme difficulties and loss of income and decrease of income for various sources trying to Honor the terms of the Note and Deed, since Aug, 29, 1997.

16. Plaintiff informed Delta Funding of the loss of spouse, and income change, in order to bring the mortgage current, Plaintiff had to enter into forbearance in agreement to maintain a dwelling place several times.

17. During these communications with Delta Funding as well as Ocwen, there was not mention of a simple interest loan, or simple interest in connection with the said loan.

18. Plaintiff experience an overwhelming change in income due to various changes including but not limited to: loss of personal income, losses in the financial market, and cancellation of contracts due to death of others.


19. Plaintiff made payments to Delta Funding from **October 4, 1997** until the transfer of the loan on **May 5, 2001** to Ocwen Federal Bank the principal balance transferred was $61,495.98. This difference in the original principal balance and the transferred principal balance was $254.02.

20. Plaintiff in November, 2004 faced termination of employment and questioned in writing to Ocwen the situation with the loan. This letter made reference to the servicing agent about treatment from their customer service staff, the return of a payment that put me in foreclosure status, the demand of why the loan balance never went down. See item #____4____.

21. Plaintiff received a reply from the Office of Thrift Supervision, in January 2005, that finally solved the long mystery of my payments. When the loan papers were signed, paid counsel, Pam I Gordon, never pointed out in the terms of the note that it was not just a fixed rate, for 30 years , but it was a "Simple Interest" loan. See item #_____5____

22. Plaintiff be came aware of the Janet Reno law suit, (United States of American v. with Delta Funding Corporation and Delta Financial Corporation) (CASE # CV0001872 IN THE UNITED STATES DISTRICT COURT THE EASTERN DISTRICT OF NEW YORK) and all of the violations that African American Women, had been subjected to, and this occurred during my loan origination, (Title VIII, of the Civil Rights Act of 1968, and sections of 42 U.S.C.)____6____

23. Plaintiff received information and informed she was part of a for Class Action Law suit filed Lopez, et.al v. Delta Funding Corporation, et.al. (IN THE UNITED STATES DISTRICT COURT THE EASTERN DISTRICT OF NEW YORK) CASE #CV 987204)

24. Plaintiff had been targeted by Delta Funding in 1997 in a discriminatory manner, which violated her Civil Rights.

25. Plaintiff now has learned that Delta Funding Corporation has also trapped her in a "Simple Interest loan, and reported to the Credit bureau lateness of 120 day for a substantial period of time. This action made it impossible to obtain other financing to get out of this loan, and limited gainful employment because of this reporting method.

26. Plaintiff requested a refi with Delta and with Ocwen on several occasions to correct the delinquent situation, but that request was not honored.

27. Plaintiff still in Honor tried to maintain the dwelling and exercised forbearance agreements to keep property during course of about 10 or 11 years

28. Plaintiff in 2008, faced foreclosure again because Ocwen forced a o a foreclosure situation and offered a loan modification that was one sided in nature.

29. Plaintiff received the Loan Modification on May 9, 2008. A new principal balance of $85,410.22 was stated. All payments of taxes and insurance would paid directly by Plaintiff, it was stated the loan would still be delinquent and reported to the credit bureau.

30. Plaintiff's read language in the Loan Modification contrary to Plaintiffs belief;
The excerpt of the Loan Modification that was disturbing is below: Ehibit _____7_____

> 10: BY EXECUTING THIS MODIFICATION, YOU FOREVER IRREVOCABLY WAIVE AND RELINQUISH ANY CLAIMS, ACTIONS OR CAUSED OF ACTION, STATURE OF LIMITATIONS OR OTHER DEFENSES, COUNTERCLAIMS OR **SETOFFS** OF ANY KIND WHICH EXIST AS OF THE DATE OF THIS

MODIFICATION, WHETHER KNOWN OR UNKNOWN, WHICH YOU MAY NOW OR HEREAFTER ASSERT IN CONNECTION WITH THE MAKING, CLOSING, ADMINISTRATION, COLLECTION OR THE ENFORCEMENT BY OCWEN OF THE LOAN DOCUMENTS, THIS MODIFICATION OR ANY OTHER RELATED AGREEMENTS.

11. BY EXECUTING THIS MODIFICATION, YOU IRREVOCABLE WAIVE ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS MODIFICATION AND ANY RELATED AGREEMENTS OR DOCUMENTS OR TRANSACTIONS CONTEMPLATED IN THIS MODIFICATION.

31. Plaintiff refused to sign the Loan Modification offered by OCWEN, as it is Fraud by inducement, with the above restrictions, which would have been signed under stress and duress.

32. Plaintiff is requesting a definition of the term "SETOFFS" used by Ocwen in item #10.

33. Plaintiff has paid approximately $54,670.85 just between the period of May 5, 2001 and Feb, 11, 2009, that has not been credited to any principal amount, as evidence by the spread sheet from Ocwen. See attached item #_____8_____. This figure does not include the time period of Sept 4, 1997 to May 5, 2001, nor the period of Feb 11, 2009 until Sept 3, 2009.(see column #15" Principal Balance, Description of column #6)

34. Plaintiffs notes for the record that The Promissory note was for the amount of $61,750.00, in Aug, 29, 1997 but On September 15, 2009 the principal balance of the alleged foreclosure was $61,413.79. About twelve years later Plaintiff has only been credited with $336.21 towards the principal balance of a fixed rate 30 year loan.

35. Plaintiff received a 1099C Cancellation of Debt. For $76,000.00 and debt canceled for $29,088.11.

36. Plaintiff has discovered that loan documents used for application process, have signature that does not belong to plaintiff, that cleared underwriting department in the original loan from Delta Funding. See item #_____9_

37. Plaintiff requested RESPA information giving all pertinent information of both loan numbers, one from Delta Funding, and one from Ocwen. This information was requested from WELLS FARGO, and they informed Plaintiff that there was not loan showing with them, Delta Funding would not accept RESPA request and envelope was returned, Ocwen did not receive any request from Plaintiff responded withholding information and would not furnish any documents of said loan, except for a **copy of a copy** of Deed and Note. See #_____10____

38. Plaintiff asked for a complete foreclosure package inducing a copy of loss affidavit of the note From the Commissioner of Accounts office, from PAM I GORDON, commission of Accounts, stated she did not have that information to give to Plaintiff.

## WELLS FARGO AND OCWEN HAVE NO STANDING TO FORECLOSURE

39. Defendant WELLS FARGO did not provide a certified copy of the bond(s) that were purchased to insure the alleged "loan". At the foreclosure sale and at the unlawful detainer hearings.

40. Defendant WELLS FARGO did not produce evidence nor proper authentication nor did they introduce the documents in support of the action by a competent factual witness, available for cross examination.

41. Professional Foreclosure can not testify for Defendant Wells Fargo, nor can Professional Foreclosure, nor can Shapiro and Burson authenticate any documents in this case regarding the alleged mortgage loan transaction since none have any personal knowledge of any alleged transactions in this matter. It is well established that statements of counsel of alleged facts are not sufficient to establish facts or evidence in the case for its client. There was no authenticated supporting documents used for the foreclose process. See Exhibit___11_____ from pages of transcript of Attorney Allen T. Gravitt of Gravitt and Gravitt.

42. WELLS FARGO and OCWEN are in violations of section UCC 3-302 © for neither has demonstrated that they are a holder in due course." ...A person does not acquire rights of a holder in due course of an instruments take by legal process or by purchase in an execution."

43. Plaintiff object's that the lost affidavit was not filed or produced to the filing of the alleged "Original Note" and "Original Mortgage" on the ground that said documents are not properly introduced into the record and there is no independent source as to the validity of said documents. Plaintiff moves the Court to strike said filing from the record.

44. Defendants do not have a certified copy of the Promissory Note or the lost affidavit.

45. Defendants do not have a certified copy of the admissible proof of how Plaintiff acquired the Promissory Note and Mortgage.

46. Chain of custody of the Promissory Note and Mortgage has not been established in this matter.

47. Defendants have not presented proof of assignment of the Mortgage. Without proof of assignment, Defendants do not have standing in this matter.

48. Plaintiff checked the HALIFAX COUNTY Recorder's Office and there is no valid assignment of Note or Lost affidavit recorded in Defendants name from the "Note Holder".

49. At the Foreclosure Sale, the only alleged proof of Wells Fargo's ownership of the Mortgage Note is alleged by counsel, not from an authenticated supporting document.

50. At the filing of the action DEFENDANT WELLS FARGO did not have actual possession of the original Mortgage Note, nor did it present a lost note affidavit.

51. Courts have held that a party's lack of standing is a defect that cannot be cured by acquiring the right of standing after action has already been filed. *See Gwaltney of Smithfield, Ltd v. Chesapeake Bay Foundation, Inc., 484 U.S. 49*, 69 (1987) (Scalia, J., concurring)(Subject matter jurisdiction depends on the state of things at the time of the action brought). See also, Progressive Exp. Ins. Co., 913 So.2d 1281. Compare to Dasma Investments, LLC v. Realty Assoc. Fund III, LP, 459 F. Supp. 2d 1294, 1302 (S.D. Fla., 2006)(**Party suing on Promissory Note must be in actual possession of the original to have standing**).

> http://business.highbeam.com/127/article-1G1-54175018/payments-articles-3-4-and-4a

Article from: Business Lawyer | November 1, 1998 | **Littlefield, Neil O.**

SUITS ON LOST NOTES

This year's surveyed cases include a surprising number that involve suits on lost instruments. A number of those cases involve a change made by revised Article 3. Pre-revision U.C.C, section 3-804 allowed the owner of a lost instrument to bring an action on the instrument.(11) The revised provision, found in U.C.C. section 3-309, permits suit by a person who "was in possession of the instrument and entitled to enforce it when loss of possession occurred."(12) Part of the explanation for the change in wording was to substitute the precise term "person entitled to enforce" for the looser term "owner."(13) It is unclear, however, why the explicit requirement that the person be "in possession when loss of possession occurred" was added. Assuming X is in possession of a note at the time it is lost, X has a right to proceed under revised U.C.C. section 3-309. Is it not possible for X to transfer this right to Y? Normally a transfer of rights from X to Y gives Y all of X's rights. But in this instance, does Y qualify as one in possession when loss of possession occurred? And, if not, what policy deters Y's enforcement of the rights transferred from X?

In Dennis Joslin Co. v. Robinson Broadcasting Corp.,(14) Robinson Broadcasting Corporation (Robinson) executed a note payable to Madison National Bank (Madison) and the defendants executed an unconditional loan guarantee of payment for the note. The Federal Deposit Insurance Corporation (FDIC) acquired the note when Madison failed. The FDIC sold the note and issued an affidavit of lost note to the plaintiff's assignor because the FDIC had lost the note. The note then was assigned to the plaintiff, who sought to enforce it. The guarantor defendants argued the plaintiff was not a party that could utilize revised U.C.C. section 3-409 because of the "possession" language discussed above. District Judge Paul Friedman agreed. (15) The judge indicated that the new language might have been intended simply to require that the person in possession at the time the note was lost was a person entitled to enforce it.(16) He concluded, however, that "the plain language of the provision mandates that the plaintiff suing on the note must meet two tests, not just

one: **it must have been both in possession of the note when it was lost and entitled to enforce the note when it was lost."**……..

52. If Defendant Wells Fargo is somehow determined to be the real party in interest in this matter, Defendant Wells Fargo failed to present (Plaintiffs request that Defendant Wells Fargo present the following documents.

    a.    Certified proof to show the date Plaintiff came into possession of the Mortgage Note.

    b.    A copy of Title Page to the Mortgage Note, the front and back of the Mortgage Note, and **all allonges/assignments** that will show the history of the Mortgage Note to establish chain of title.

    c.    The 2046 balance sheet as it relates to the original loan, which will show the ledgering of the account from beginning to present and will show when Defendant Wells Fargo took over the account.

    d.    The 424 B-5 prospectus (security filing); if Defendant Wells Fargo is holder in due course, the Security Exchange Commission should know about it since the Mortgage Note has been transformed into a security.

    e.    Defendant Wells Fargo failed to present the IRS 1099OID and 1099A reports that will identify who the principal is from, which capital and interest was taken, and who the recipient or payer of the funds are, and who is holding the account in escrow, unadjusted.

    f.    The S3-A Registration Statement under the Securities Act of 1933: This report will show when and where the Mortgage Note (security) was sold.

    g.    FASB (Financial Accounting Standards Board) part of GAAP (Generally Accepted Accounting Standards): FASB 133, 140, 5, 95. These will direct the auditor to the liability side of the "creditor's" books and also creates the trail of exactly where the money came from, where it went, and who has a beneficial interest in the security. These supporting records that would show ownership of the security, particularity FASB 140 (*Accounting for Transfers and Servicing of Financial Assets and Extinguishments of Liabilities*)

    h.    A certified copy of the **bond** that Defendant purchased to insure this "loan," and copies of any payments made to date.

53. Defendants having obtained foreclosure judgment without an assignment in the record, without the evidence of a chain of assignment at time of filing suit constitutes a "false, deceptive, or misleading representation or means" in connection with the collection of debt, is in violation of the Federal Fair Debt Collection Practices Act, 15 U.S.C. §1692(e) and that has occurred in this case.

54. Defendant Wells Fargo did not adequately demonstrate that it owned or held the subject Mortgage Note (original) at the time Defendants filed this foreclosure action, and Defendants was fully aware of this lack of ownership, and its lack of standing at the time of the commencement of this action.

55. Defendant Wells Fargo further failed to establish in any of its papers or filings that it owned or held the Mortgage Note. And Carol Hollmann's affidavit (found in recorders office) cannot be considered valid evidence of proof.

56. In this case, the Court was without jurisdiction in the foreclosure sale.; DEFENDANT WELLS FARGO has perpetrated a fraud upon this Court in pursuring the foreclosure and unlawful detainer this action as set out herein.

57. The falseness of Defendants allegations that it holds and possesses the right to foreclose is subject to a cursory review of the documents found in the Recorders office in the chain of Trustees from the signers of the documents by Patricai A. Miner, (Default Servicing Manger) and Heather A. Snider. (Notary Public). A plea is considered 'sham' when it is palpably or inherently false, and from the plain or conceded facts in the case, must have been known to the party interposing it to be untrue." Exhibit__12____. *190, 193* (Fla. *1934*); *O'Berry v. Pearson*, 186 So. 430 *(1939); Furst v. Blackman*, 744 So.2d 1222 (Fla. 4th DCA 1999), *Reif Development, Inc. v, Wachovia Mortg. Co.*, 340 So.2d 1267 (Fla. 4'h DCA 1976).Defendants foreclosure is a sham" action.-

58. The integrity of the civil litigation process depends on the truthful disclosure of facts. Plaintiff's actions undermine the integrity of this civil litigation process.

59. A trial court has the inherent authority, within the exercise of sound judicial discretion, to dismiss an action and strike an order when a plaintiff has perpetrated a fraud or made misrepresentations to the Court.

60. A party guilty of fraud or misconduct in the prosecution of a civil proceeding should not be permitted to continue to employ the judiciary to achieve its ends where Plaintiff asks this court for immediate relief and protection.

61. Defendants Wells Fargo and Ocwen are not real parties of interest in this matter. Defendant have not been able to produce the Orginial note or a lost not affidavit.

62. Defendant Professional Foreclosure, cannot lawfully or legally testify to unsupported facts for Defendant Wells Fargo.

63. Defendant Professional Foreclosure, is not a competent fact witness with personal knowledge of the facts in this case.

64. Defendant Professional Foreclosure is unable to state the manner in which the **unavailable** note occurred."

Shapiro and Burson, LLP., stated in a Foreclosure letter dated Nov, 18, 2008 that the note was **unavailable.____13____**

65. In a letter dated April 1, 2005 Bierman & Geesing and Ward, LLC., also stated that the note was lost that the note formed the basis of the foreclose action.  **exhibit 13**

66. Defendants Wells Fargo's lack of ownership of the Mortgage Note in this case goes to the heart of its claim of standing, permeates the entire proceeding and subverts the integrity of the action. *Metropolitan Dade County v. Martinsen,* 736 So.2d 794 (Fla. 3rd DCA 1999).

67. It is appropriate for the trial court to dismiss an action *based* on fraud, where there is a blatant showing of fraud, pretense, collusion, or other similar wrongdoing. *Distefano v. State Farm Mutual Automobile Ins. Co.,* 846 So.2d *572, 574* (Fla. 1st DCA 2003).

68. Rules of Civil Procedure provides in pertinent part that every action may be prosecuted in the name of the real party in interest, but a personal representative, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought.  Defendants Wells Fargo meets none of the standing criteria set forth above.

69. Standing requires that the party prosecuting the action have a sufficient stake in the outcome and that the party bringing the claim be recognized in the law as being a real in interest entitled to bring the claim. This entitlement to prosecute a claim rest exclusively in those persons granted by substantive law, the power to the claim. *Kumar Corp. v. Nopal Lines, Ltd, et al, 462* So.2d 1178 (Fla. 3d DCA 1985).

70. "The determination of standing to sue concerns a court's exercise of jurisdiction to hear and decide the cause pled by a particular party." *Rogers & Ford Constr. Corp. v. Carlandia Corp., 626 So.2d 1350, 1352* (Fla. 1993).

71. **Courts have held that a party's lack of standing is a defect that cannot be cured by acquiring the right of standing after action has already been filed.** See *Gwaltney of Smithfield, Ltd v. Chesapeake Bay Foundation, Inc., 484 U.S. 49,* 69 (1987) (Scalia, J., concurring)(Subject matter jurisdiction depends on the state of things at the time of the action brought). See also, *Progressive Exp. Ins. Co., 913* So.2d 1281. Compare to *Dasma Investments, LLC v. Realty Assoc. Fund III, LP,* 459 F. Supp. 2d 1294, 1302 (S.D. Fla., 2006)(**Party suing on Promissory Note must be in actual possession of the original note to have standing**).

## COUNT 1- FAIR DEBT COLLECTION PRACTICES ACT VIOLATIONS

**Defendants, Ocwen, Shapiro and Burson, and  Professional Foreclosure Corp. of Va.**

**72. All foregoing paragraphs are incorporated herein as if fully restated.**

73. Debt collectors are abusing consumers at an astonishing rate and are doing so as they believe few consumers know their rights or will act upon their rights so the economic gain far outweighs any

perceived danger of a lawsuit or verdict.

> **a.** Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors. 15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows:
>
> (b) Existing laws and procedures for redressing these injuries are inadequate to protect consumers.
>
> (c) Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.
>
> (d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.
>
> (e) It is the purpose of this title to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

**74.** The Defendants misconduct was designed to harm the Plaintiff as Defendants acted with full knowledge of the damage this type of misconduct will cause.

75. Defendants Professional Foreclosure Corporation Va, and Shapiro and Burson, LLP., were obligated to handle the foreclosing proceedings pursuant to the Fair Debt Collection Practices Act. 15 U. S. C.1692 et seq.

76. Defendant's violated sections 1692 (d), (e), (f),(g) of the Act by engaging in harassing and abusive conduct and unfair practices by assessing fees, including attorney fees, handling the foreclosure proceedings, including selling Plaintiff's property at foreclosure on September 15, 2009. Moreover, Defendants did not provide Plaintiff the information to validate the debt as required under the act. Plaintiff'.

> (Plaintiff requested RESPA information giving all pertinent information of both loan numbers, one from Delta Funding, and one from Ocwen. This information was requested from WELLS FARGO, and they informed Plaintiff that there was not loan showing with them, Delta Funding would not accept RESPA request and envelope was returned, Ocwen did not receive any request from Plaintiff responded withholding information and would not furnish any documents of said loan, except for a **copy of a copy** of Deed and Note)

77. Plaintiff was harmed by Defendants conduct and suffered extreme losses, including property located at 1032 Reaves Loop, Virgilina. Va. , and the sweat equity of the Plaintiff, not to mention the amount of monies Plaintiff's has paid in excess of $56,000.00 that was never applied to principal. .

The tax value of the properties, both sections of land are valued at ($98,325.00 and $3,072.00) $ 101,397.00. the fees listed in a payoff quote were $36,757.22 dated March 3, 2009. The 2009 Cancellation of Debt for 1099C listed the Fair Market Value of property as $76,000.00 and the canceled amount of debt as $29,088.11.The Disbursement sheet with the Commissioner of Accounts shows the disbursement being $70,680.00. see Exhibit _____ 14 _____

78 Defendants damaged Plaintiff opportunity to secure refinancing not reporting payments that were made in a timely manner. All reporting was done in a negative manner as to limit and halt the Plaintiff from escaping from them. Therefore a trap was set the captured its prey.

79. Defendants had an obligation and a duty to speak the truth as Defendants are not allowed to make statements which do not contain the full truth. (when requested the simple interest factor was never revealed and a solution offered.)

**80. Plaintiff has been damaged by the misrepresentations and suppression of material facts by Defendants.**

81. Defendants were successful in their plan, scheme, design, and did in fact cause severe damages to Plaintiff, from the on set of the loan with Delta Funding in it racial and gender discrimination plot and the continuation of extorting funds in payments and excessive fees.

## COUNT 2 - ACTION TO SET ASIDE FORECLOSURE AND WRIT OF POSSESSION BASED ON UNCLEAN HANDS
### All Defendants

82. The Plaintiff incorporate herein by reference all other factual allegations contained in this Complaint.

83. Foreclosure procedure in Virginia is equitable in nature, Foreclosure, therefore, are subject to equitable defenses.

84. The equitable doctrine of "unclean hands" prevents a party from benefiting from any inequitable or wrongful conduct.

85. The foreclosure of the Plaintiffs house was a product of unclean hands.

86. At all times relevant to this Complaint, Defendants Wells Fargo did not adequately demonstrate that it was the note holder.

87. Plaintiffs home in a foreclosure sale.

88. Accordingly, the foreclosure sale and the Writ of possession dated Nov. 16, 2010 should be set aside.

89. Defendant WELLS FARGO did not adequately demonstrate that it was the note holder.

## COUNT 3 - ACTION TO SET ASIDE FORECLOSURE AND WRIT OF POSSESSION BASED ON EQUITABLE ESTOPPEL
### Defendant Wells Fargo

90. The Plaintiff incorporate herein by reference all other factual allegations contained in this Complaint.

91. Foreclosure procedure in Virginia is equitable in nature. Foreclosures, therefore, are subject to equitable defenses.

92. The equitable doctrine of "equitable estoppel" prevents a party from taking advantage of misrepresentations.

93. The foreclosure of the Plaintiffs house was a product of such misrepresentations

94. Defendants Wells Fargo's conduct exhibits an express intention to deceive or such careless and culpable negligence as amount to constructive fraud.

95. Accordingly, the foreclosure sale should be set aside.

## COUNT 4- BREACH OF CONTRACT
### Defendant Ocwen and Wells Fargo

96. The Plaintiff incorporate herein by reference all other factual allegations contained in this Complaint.

97. At times relevant to this Complaint Defendant Ocwen had actual and or apparent authority to modify the Note and Deed of Trust and enter into a Modification Agreement.

98. . Defendant Wells Fargo made Ocwen its agent, among other times, when it detailed Defendant Ocwen's ability to enter into Modifications Agreements on its behalf in the Guide.

99. The Note and Deed of Trust were modified by several foreclosure agreements over the life of the loan all in favor of the Ocwen and its agents.

100.. The Plaintiff accepted in Honor all the Forbearance Plans to maintain her home, except for the 2008 Modification because of the waiver language and and extremity excessive fees. Exhibit____15_____.

101. The forbearance agreements were accepted because Plaintiff had been trapped by Defendant Ocwen practices. Plaintiff had not been able to refinance the loan because of all the negative credit reporting from Ocwen over the years.

102. Plaintiff had requested from Ocwen several times to work out a modification, to lower payments, interest rates, to no avail and no relief of the situation. See exhibits __16____

103. Defendant Ocwen breached the Forbearance Plan, Note and Deed of Trust by not allowing Plaintiff to correct payment may in March 2008 and for not providing a reasonable permanent loan payment plan when the Plaintiffs had made all payments required by the last loan forbearance Plan.

104. Defendant Ocwen forced Plaintiff to file bankruptcy to protect her interest in the property, that was later dismissed due to improper conduct by Plaintiffs Bankruptcy Counsel, Nnika E. White.

105. Defendant Ocwen breached the forbearance Plan, Note and Deed of Trust by foreclosing on the property, by the Appointment of Substitute Trustees to Professional Foreclosure Corporation of Virginia by Robert Kaltenbach, of Ocwen the servicer not Wells Fargo, for the purpose of Foreclosing.____17_____

106. Plaintiff was never offered a bona fide opportunity to modify her loan as requested may times, and this assurance of the opportunity was alluded to by trustee in the Bankruptcy proceedings. ____18_____

107. Even absent any codification and waiver, the Note and Deed of Trust contained an implied covenant obligating Defendant Ocwen to treat Plaintiff with good faith and fair dealing.

108. Defendant Wells Fargo failed to treat Plaintiff with good faith and fair dealing, including through its agents direction for the Plaintiff to default on the loan, more than one time, its agent's false assurance about the status of the Forbearance Plan in a timely manner and its agents assurances about the need to not worry about the foreclosure notices.

109. Defendant Ocwen's failure to treat the Plaintiff with good faith and fair dealings breached

the Note and Deed of Trust. Letter dated Nov. 18, 2004 (Dafnus Ben) #19

110. The breaches of the Note and Deed of trust, Forbearance Plans, and the Loan Modification Plan, and all other contracts have caused the Plaintiff to suffer economic damages, in addition to those complained of in previous courts hereto for which there is no adequate remedy at law, and for which Defendant Ocwen should be held liable to the Plaintiff.

111. Such damages amount to sums in excess of $500,000.00 over the last ten (10) years, in the aggregate and includes losses relating to the loss of her home, the degradation of her credit, and the imposition of fees related to the foreclosure sale and eviction proceedings when the borrower was not in default.

112. The Plaintiff request that award and judgment be entered in her favor against the defendants Ocwen and Wells Fargo, for breach of contract as determined by the Court, plus interest and costs and other equitable relief that the Courts deems appropriate.

### COUNT 5- UNJUST ENRICHMENT
### Defendants Ocwen and Wells Fargo

113. The Plaintiff incorporated herein by reference all other factual allegations contained in this Complaint.

114. A benefit was conferred by Plaintiff to Defendant Ocwen trough the payments Plaintiff made in order to modify her loan.

115. Defendant Ocwen knew of the conferring of the benefit.

116. In addition and in the alternative, the Forbearance Plan, Note and Deed of Trust were not all valid and fair contracts. The promissory note set a deceptive trap with a misnomer of the interest rate, a major misconception boarding on fraud, if not direct and calculated fraud. " interest will be charged on a simple interest method". Interest will begin the date of disbursement, and will accrued on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 13.05%." This misnomer is perpetuated, to increase and maximize profits. This loan was actually turned out to be an interest only loan at worst, if you missed a payment or fell behind, or at best a adjustable rate mortgage. It was not a 30 year fix rate mortgage as indicated or I was lead to believe. The account overview does not show the loan as being "Simple Interest" ____#20_____.

117. Plaintiff made payments to Delta Funding from October 4, 1997 until the transfer of the loan on May 5, 2001 to Ocwen Federal Bank the principal balance transferred was $61,495.98. This

difference in the original principal balance and the transferred principal balance was $254.02.

118. Defendant Ocwen received in excess of $54,000.00 from the May 5, 2001 to Feb. 29, 2008

see Ocwen own spread sheet of Payments from Plaintiff, and the principal amount never went down. Principal balance at the transfer date was $ 61,495.98 on May 5, 2001 and the Principal balance on Feb. 23, 2009 was $61,495.98.

119. Defendant Ocwen, continued to collect funds during the Bankruptcy process, until Aug. 3, 2010, all payments were current. These circumstances would render it inequitable for Defendant Ocwen to retain the benefit without paying for its value.

120. Wherefore the Plaintiff request the Court declare her foreclosure sale void, on in the alternative voidable, impose a constructive trust for her benefit so that her home can be deeded to the Plaintiff, and the award of court costs and such further legal and equitable relief as this court deems appropriate.

## Count 6– BREACH OF FIDUCIARY DUTY
### Defendant Professions Foreclosure Corporation

121. The Plaintiff incorporated herein by reference all other factual allegations contained in this Complaint.

122. Defendant Professional Foreclosure Corporation served as Substitute Trustee on the Deed of Trust granted by the Plaintiff.

123. Defendant Professional Foreclosure Corporation had a fiduciary duty to the Plaintiff, in the role of serving as a trustee to a deed of trust, which required it to set in good faith and utilize discretion in the management of the trust that a prudent man of discretion and intelligence would in exercising his own affairs. Additionally, the trustee has the right to invoke the aid and direction of a court of equity in the execution of the trust.

124. That fiduciary duty required Defendant Professional Corporation to verify that the loan was in default before conducting a foreclosure sale.

125. Defendant Professional Foreclosure Corporation breached its fiduciary duty by not properly verifying that the note holder was properly authenticated.

126. Defendant Professional Foreclosure Corporation breached its fiduciary duty by conducting a foreclosure sale when Plaintiffs loan was not in default.

127. The fiduciary duty of a trustee to a deed of trust also requires Defendant Professional Foreclosure Corporation to investigate the validity of the note holder.

128. Defendant Professional Foreclosure Corporation breached this duty by proceedings to evict the

Plaintiff.

129. WHEREFORE, Plaintiff demands judgment against Defendant Professional Foreclosure Corporation in her favor in the amount of not less than $500,000.00 compensatory damages, punitive damages in an amount to punish Defendant and prevent the Defendant form engaging in such conduct again, cost of this action, reasonable reimbursable fees, and such further legal and equitable relief as the Court deems appropriate.

*Rudean Thomas*

Respectfully submitted,

This the 23, day of November er 2010.

Rudean Thomas

1032 Reaves Loop

Virgilina, Va. 24598

VERIFICATION

I Rudean Thomas verify that all of the allegations in the Amended Compliant are true to the best of my knowledge.

Affirmed on this __29__ day of __November__, 2010, before me, the undersigned Notary Public in and for the State of ~~Virginia~~ NC, appeared __Rudean Thomas__ personally known to me or proved to me on the basis of satisfactory evidence, to be the living soul whose signature appears in the within instrument and acknowledged to me that they executed it.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this __29__ day of __November__ 20__11__ _____ Seal
NOTARY PUBLIC
My Commission Expires __April 22, 2011__

(Notary seal: KIM P. HAWKINS, NOTARY PUBLIC, PERSON COUNTY, NC)

**CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2010 I served a true and accurate copy of the within pleading by first-class mail on opposing counsel, defendants *[insert name and address]*.

November 23, 2010

Professional Foreclosure Corp. of Va.
John b. Burson, Registered Agent
13135 Lee Jackson Highway, #201
Fairfax, Virginia 22033-000
Shapior and Burson. LLP.
236 Clearfiled Avenue, suite 215
Virginia Beach, Va. 23462


Wells Fargo Bank, N.A., as Investor Individually and as
Trust Administrator Jointly and Severally
(Office of the President)
420 Montgomery Street
San Francisco, Ca. 94163

>   Serve: Secretary of the Commonwealth
>       Services of process Department
>       Post Office Box 2453  or 2452
>       Richmond, Va. 23218

OCWEN LOAN SERVICING, LLC
A Delaware Limited Liability Company
1675 Palm Beach Lakes Blvd.
West Palm Beach, Fl. 33401

>   Serve: Registered Agent
>       Corporation Service Company
>       11 South 12th Street

Richmond, VA. 23218

Date     _____/s/ Rudean Thomas_____

Respectfully submitted,
Rudean Thomas
1032 Reaves Loop
Virgilina, Va. 24598